WALLACE ET AL. *v.* FEEHAN.

[No. 26,449.   Filed May 24, 1934.]

*Guy Colerick, H. B. Spencer, Samuel E. Garrison,*
*Leonard, Rose & Zollars,* and *Joseph W. Hutchinson,*
Deputy Attorney-General, for appellants.

*Aiken, Grant & Aiken,* for appellee.

TREANOR, J.—This was an action brought by the appellee against appellants to recover damages on account of the loss of a growing crop of oats plowed under by appellants and on account of injury to the soil of the

field resulting from its having been plowed by appellants at a time when it was extremely wet.

Appellants filed an answer in two paragraphs, the first in general denial, and the second alleging that they were officers and employees of the Department of Conservation of the State of Indiana and were acting in that capacity at the time of the plowing complained of; that the European corn borer pest, the nature of which was described, had spread from the eastern portion of the United States and Canada and had entered this State, including the township in which appellee's land was situated; that in order to combat the pest and check its spread it was necessary that all corn stubble, corn stalks and corn cobs be gathered up and destroyed by burning or be entirely plowed under the ground; that the danger of infestation of the corn crops in the northeastern part of Indiana became so great, threatening, and menacing, and the necessity for taking urgent and energetic methods for the suppression of the infestation and minimizing the danger to be encountered therefrom became so great and urgent that the Conservation Commission of the State of Indiana declared a portion of northeastern Indiana, including Allen County and said Jackson township, to be an area infested by the corn borer and quarantined said portion of the state against the spread of the infestation and made, established, and promulgated certain rules and regulations which were approved by the Governor of Indiana, effective Feb. 10, 1927, for the prevention of the spread, and for the suppression and control, of the corn borer pest. The regulations, which are set out in appellants' answer, designated the quarantined area, placed restrictions upon the removal of certain corn and corn products from such area, and further contained the following provision:

"Before May 1st of each year all corn within an infested area shall be cut or caused to be cut within three inches of the ground or standing stalks and higher stubble shall be snapped at the ground line, raked and burned or completely buried by plowing under by the respective owners thereof, and all corn stalks within an infested area shall be by said owners disposed of or caused to be disposed of by ensiling, shredding, burning or completely buried by plowing under."

The answer further alleged that the appellant Wallace, through agents of the Department of Conservation of the State of Indiana, prior to appellants' entry upon appellee's land, had given notice to the appellee and his tenants on such land, and all other persons operating farm lands in the quarantined area, that all corn stubble, corn cobs, and other corn refuse upon such lands must be gathered up and burned or completely plowed under before the summer of 1927; that in 1926 a crop of corn was grown upon appellee's land; that in 1927 appellee's tenants disked the land and sowed it to oats but that the corn stalks, corn stubble, corn cobs and other corn refuse thereon were not destroyed as required by said regulations and notice but were left on the surface of the ground in such manner as to afford dangerous shelter for the corn borer and that the appellee and his tenants failed and refused to gather up and destroy, or plow under, the corn stalks, corn refuse, etc., but declared that they would not do so or permit the Department of Conservation or any of its agents to do so; that at the time such notice was given appellee and his tenants and until and at the time appellants entered appellee's lands it was and continued to be necessary in the reasonable and proper prevention and control of the spreading of the infestation that the corn cobs, corn stalks, and other corn refuse should be destroyed or entirely plowed under the ground; that after the expiration of the time given by the regulations and notice for the appellee to

gather up and destroy or plow under the corn stalks, corn refuse, etc., appellants entered upon and plowed appellee's land.

Appellee's demurrer to the foregoing paragraph of answer was sustained and appellants filed a 3rd paragraph of answer in which, in addition to substantially the same facts as were contained in the 2nd paragraph of answer, it was further alleged that specimens of worms found in Jackson Township were identified by agents of the Department of Agriculture of the United States to be corn borer worms and that on or about November 23, 1926, agents of that Department determined that the corn borer existed in Jackson Township and gave notice of such determination to the Department of Conservation of the State of Indiana and to the defendants Wallace and Ulman as State Entomologist and deputy or assistant State Entomologist, and quarantined said Jackson Township against the spread of the infestation; that said defendant Wallace, in giving notice to appellee and all other persons requiring the destruction of corn refuse as described above, acted in good faith under the order and direction of the Department of Conservation of the State of Indiana and relied upon the notice given him by agents of said Department of Agriculture, honestly believing that corn borer worms were found and did exist in said township.

Appellee's demurrer to the 3rd paragraph of answer was sustained and appellants thereupon filed their 4th and 5th paragraphs of answer. The 4th paragraph alleged substantially the same facts as were contained in the 2nd paragraph and further alleged that the plowing complained of was done at a proper and reasonable time and in a proper and reasonable manner and that it was a proper and reasonable method of carrying out the rules and regulations adopted by the Department of Conservation and a proper and reasonable method of

preventing the spread of the corn borer infestation. By their 5th paragraph of answer appellants alleged substantially the same facts as were contained in their 3rd and 4th paragraphs of answer. Appellee's demurrer to the 4th and 5th paragraphs of answer were overruled and a reply in general denial was filed. Trial by jury resulted in a verdict for damages for appellee.

Appellants assign as errors (1) and (2) the action of the trial court in sustaining appellee's demurrers to the 2nd and 3rd paragraphs of answer, and (3) overruling appellants' motion for new trial. Of the grounds relied upon in their motion for a new trial, appellants present under Points and Authorities, the following:

(1.)   The damages assessed are excessive;
(2.)   the verdict of the jury is not sustained by sufficient evidence;
(3.)   the verdict of the jury is contrary to law;
(4.)   error of law committed during the trial.

Under the 4th ground for new trial appellants question the court's action in giving instruction number 1 upon its own motion and instructions numbered 1, 3, 4, and 5 at appellee's request and in refusing to give instructions numbered 1, 3, 9, 10, 12, 15, and 16 tendered by appellants. Appellants also present for review under the 4th ground for a new trial numerous rulings of the trial court in admitting or rejecting evidence over appellants' objections.

The following excerpts from enactments of the General Assembly are pertinent to the questions presented by this appeal:

"The department of conservation shall have power and it shall be its duty:
"5. To prevent the introduction and spread of diseases or pests injurious to fruits, fruit trees, horticultural and agricultural plants and plant products and bees, and to specify the means and methods to be employed for the prevention, supression or control of such diseases and pests.

"6. To formulate rules and regulations for the guidance of inspectors in making inspections and investigations under the provisions of this act.

"13. To formulate and enforce necessary quarantine regulations subject to the approval of the governor.

"17. To make all necessary rules and regulations for the enforcement of the law relating to horticulture and bee-keeping and the prevention of plant diseases and pests." §4740, Burns Ann. Ind. St. 1926, §60-716, Burns 1933, §4830, Baldwin's 1934, Acts 1919, ch. 60, p. 375, §16.

"If the department of conservation or any of its duly authorized and appointed agents or representatives shall discover the presence of European corn borer (Pyrausta nubilalis Hubn.) or any other destructive insect pest or plant disease in any place on any farm or premises in this State, the department may thereupon declare the township in which such place, farm or premises is located to be an infested area, and the department may, in its discretion, if such pest or disease may or is likely to spread or communicate itself to any adjacent or contiguous territory in an adjoining township or townships, declare such adjoining township or townships an infested area or infested areas. All farms and premises located within any township which has been declared to be an infested area in conformity with the provision of this act, shall be cleaned up, farmed, cultivated and operated according to such rules and regulations as the department of conservation may prescribe, and the agricultural and horticultural products thereof capable of producing and disseminating such insect pests or plant diseases shall be destroyed, treated or otherwise disposed of as the department of conservation may order and direct." §4763.1, Burns Ann. Ind. St. Supp. 1929, §15-1401, Burns 1933, §3695, Baldwin's 1934, Acts 1927, ch. 56, p. 146.

"In the event that the owner or other person having charge of such product, material, farm or premise shall fail, refuse or neglect to carry out the orders and instructions so given, and within the time limit prescribed, the department of conservation, or its authorized agents, may take the necessary action so required and the expense thereby incurred or such portion as the department of conser-

vation may determine shall be assessed against the farm or premises on which such work is performed and certified to the auditor of the county in which such farm or premises is located, and the auditor shall thereupon place such assessment on the tax duplicates of such county and such assessment shall be collected as state and county taxes are collected. All such assessments when so collected shall be paid by the auditor of the county to the department of conservation and the department of conservation shall pay such collections so received into the state treasury and the funds so accruing shall constitute a separate and distinct fund which shall be known as the corn borer fund." §4763.2, Burns, etc. 1929, §15-1402, Burns 1933, §3696, Baldwin's 1934, Acts 1927, *supra*.

"The department of conservation is hereby authorized to issue such rules and regulations as may be deemed necessary to enforce and administer the provisions of this act." §4763.4, Burns, etc., 1929, §15-1404, Burns 1933, §3698, Baldwin's 1934, Acts 1927, *supra*.

Pursuant to §4740, Burns, etc., 1926, *supra*, and prior to the passage and approval of the act of 1927 above quoted, the Department of Conservation, on February 10, 1927, adopted and promulgated the following rules and regulations:

"Whereas an injurious insect, the European Corn Borer (Pyrausta nubilalis Hubn.) new to and not heretofore widely distributed now exists in certain portions of the State of Indiana; and whereas, in order to prevent the further spread of said insect and to suppress and control the same, it is necessary, in the judgment of the Conservation Commission and of the State Entomologist, to establish a quarantine and to make the following regulation in relation thereto; therefore, the Conservation Commission of the State of Indiana orders: . . . The area herein quarantined is hereby designated as follows: . . . the Townships of . . . Jackson, . . . in Allen County; . . . Before May 1st of each year all corn within an infested area shall be cut or caused to be cut within three inches of the ground, or standing stalks and higher stubble

shall be snapped at the ground line, raked and burned or completely buried by plowing under by the respective owners thereof, and all corn stalks within an infested area shall be by said owners, disposed or caused to be disposed of by ensiling, shredding, burning or completely buried by plowing under. . . .

"This regulation to take effect February 10th, 1927, and to remain in force and effect until revoked by the Conservation Commission."

The validity of the statutory provisions involved in this case is not questioned and we assume that the enactment of such legislation was proper under the police power of the state. It is generally recognized that the preservation of the food supply is a proper subject of legislative action and laws enacted for that purpose will be upheld when they are reasonably appropriate and calculated to result in protection of the food supply against loss or destruction. Such legislative action may consist of laws enacted for the purpose of preventing and controlling plant diseases and pests tending to seriously impair or destroy crops, animals or other sources and supplies of human food.

"It is for the public interest that the public demand for all wholesome foods may be supplied in reasonable quantities; and hence it is for the public interest that established industries, materially contributing to such supply, be not extinguished or seriously impaired in their efficiency by the spread of disease of any kind. And whatever constitutes a real menace to such supply may be legitimately declared by statute to be a public nuisance, and abated as such, although it may not have been such a nuisance, or abatable as such, at common law. While the evil to be contended against is, in such case, not of the same magnitude as the menace of disease to human beings, the principle involved in the exercise of the police power to combat the evil is precisely the same in both instances." *Bowman* v. *Virginia State Entomologist* (1920), 128 Va. 351, 105 S. E. 141, 12 A. L. R. 1121.

In order that the many possibilities of such loss or destruction may be known and reasonably appropriate measures taken when necessary, the General Assembly may create an agency—a board or department—and invest it with the power to adopt rules and regulations necessary to carry out the purposes for which the agency was created. The following statements in the opinion in *Blue* v. *Beach* (1900), 155 Ind. 121, 56 N. E. 89, respecting the nature and extent of the power of health boards are applicable to the Department of Conservation:

"It is true beyond controversy that the legislative department of the State, wherein the Constitution has lodged all legislative authority, will not be permitted to relieve itself of this power by the delegation thereof. It can not confer on any body or person the power to determine what the law shall be, as that power is one which only the legislature, under our Constitution, is authorized to exercise; but this constitutional inhibition can not properly be extended so as to prevent the grant of legislative authority, to some administrative board or other tribunal, to adopt rules, by-laws, or ordinances for the government of or to carry out a particular purpose.

"That the power granted to administrative boards of the nature of boards of health, etc., to adopt rules, by-laws, and regulations reasonably adapted to carry out the purpose or object for which they are created, is not an improper delegation of authority within the meaning of the constitutional inhibition in controversy, is no longer an open question, and is well settled by a long line of authorities.

"While it is true that the character or nature of such boards is administrative only, still the powers conferred upon them by the legislature, in view of the great public interests confided to them, have always received from the courts a liberal construction, and the right of the legislature to confer upon them the power to make reasonable rules, by-laws, and regulations, is generally recognized by the authorities. Parker & Worth, on Pub. Health, §79;

4 Am. & Eng. Ency. of Law, 597; *Lake Erie, etc., R. Co.* v. *James,* 10 Ind. App. 550.

"When these boards duly adopt rules or by-laws by virtue of legislative authority, such rules and by-laws, within the respective jurisdictions, have the force and effect of a law of the legislature, and, like an ordinance or by-law of a municipal corporation, they may be said to be in force by authority of the State. *City of Salem* v. *Eastern R. Co.,* 98 Mass. 431, 96 Am. Dec. 650; *Board of Health* v. *Heister,* 37 N. Y. 661; *Gregory* v. *Mayor, etc.,* 40 N. Y. 273; *Polinsky* v. *People,* 73 N. Y. 65; *Dingley* v. *City of Boston,* 100 Mass. 544; *Swindell* v. *State,* 143 Ind. 153, 168, 35 L. R. A. 50; *People* v. *Justices, etc.,* 7 Hun. 214; Parker & Worth. on Pub. Health, §85; 4 Am. & Eng. Ency. of Law (2nd ed.) 599."

It is obvious from the foregoing that this Court has recognized that the General Assembly can confer upon administrative boards the authority to make rules and regulations which have the force of statutory enactments. In determining the question of fact as to the existence of pestilence or disease tending to destroy sources or supplies of food and the necessity for the adoption of reasonable and appropriate measures, the agency, board, or department thus created, though not judicial, is called upon to exercise judgment or discretion which, unless it appears to be purely arbitrary, is not the subject of judicial review.[1] Such rules and regulations as may be adopted must be

*Note 1.* "Local boards of health are created and authorized by the legislature and duty bound to adopt and enforce rules and regulations for the arrest and prevention of contagious and infectious diseases in their respective jurisdictions whenever the necessity therefor arises. The question of necessity must, from the very nature of the object to be attained, rest within the discretion or judgment of the board of health which seeks to adopt and enforce the rule. It is the duty of the board to determine when there has been an exposure to a contagious disease, what constitutes an exposure, when the health of the citizens under its jurisdiction is threatened by an epidemic, and when the preservation of the health of the people demands that the board take action to prevent the spread of such infectious disease. And when the board has acted it will be presumed that sufficient facts existed to warrant its action until the contrary appears." *State ex rel. Horne* v. *Biel* (1901), 157 Ind. 25, 60 N. E. 672.

reasonably appropriate and calculated to carry out the legislative purpose, and must be entirely within the power conferred upon such agency, which is subject to the same limitations in the exercise of its power to make rules and regulations as is a board of health.[2]

The Department of Conservation is authorized by statute to declare a township an infested area if the corn borer is discovered within the township; and "the department may, in its discretion, if such pest or disease may or is likely to spread or communicate itself to any adjacent or contiguous territory in an adjoining township or townships, declare such adjoining township or townships an infested area or areas." Consequently the Department had authority to declare Jackson Township infested if the presence of the corn borer was discovered in such township, or if its presence was discovered in any place so situated in relation to Jackson Township that the corn borer was "likely to spread" to "any adjacent or contiguous territory" in Jackson Township. The determination of the fact of the presence of the corn borer has been entrusted to the Department of Conservation on the assumption that such determination is a question for experts. The Department having determined the presence of the corn borer such determination is conclusive unless the one who questions it can show that such determination was unsupported by any facts which could reasonably call for good faith exercise of discretion by the Department. No such showing was made in this case. A court cannot assume to substitute its dis-

*Note 2.* "It is true that such rules and by-laws must be reasonable, and boards of health cannot enlarge or vary, by the operation of such rules, the powers conferred upon them by the legislature, and any rule or by-law which is in conflict with the State's organic law, or antagonistic to the general law of the State, or opposed to the fundamental principles of justice, or inconsistent with the powers conferred upon such boards, would be invalid. Parker & Worth. on Public Health §86." *Blue* v. *Beach, supra.*

cretion for the discretion of administrative or legislative bodies.[3] The following declarations of this Court in *In re Northwestern Indiana Tel. Co.* (1930), 201 Ind. 667, 171 N. E. 65, respecting the conclusiveness of orders of the Public Service Commission is applicable to determinations of the Department of Conservation:

> "The courts, in reviewing the work of the Commission, must keep in mind that they only have to do with questions calling for judicial interpretation as distinguished from matters administrative. So long as the Commission keeps within the field of regulative powers over the persons or entireties over which it has jurisdiction, its orders and actions with reference to such matters must be respected by the courts. The presumption of good faith and valid orders by the Commission must obtain until the contrary is made clearly to appear."

Further, it was the duty of the trial court to pass upon the validity of the regulation of the Department of Conservation requiring owners of land to destroy corn stalks in a specified manner and not to leave to the jury, as a question of fact, the reasonableness of the regulations. In passing upon that question the trial court was bound to consider the nature of the corn borer pest and the facts concerning its existence, propagation and spread; the fact that it consists of a worm hatched from an egg laid upon the stalk or leaf of growing corn, thus destroying the corn; that it hibernates in corn stalks, corn stubble, corn cobs or corn refuse and in the succeeding summer emerges transformed into a moth which in turn flies or is carried by the wind, finally settling upon the stalk

*Note 3.* "As we are at present advised, §78, *supra*, is not unconstitutional in its entirety, but only insofar as it undertakes to empower courts to control administrative or legislative discretion, or clothe the courts with legislative powers of the Commission. Hence, that part of the finding that 'the prayer of the petition should be granted,' and the judgment ordering the Commission to approve the petition, are matters involving legislative and not judicial functions." *In re Northwestern, etc., Co., supra.*

or leaf of growing corn to lay its eggs. The court also knew that an effective method of checking the spread of the corn borer infestation would consist of preventing the emergence of the moths from the corn stalks, stubble, cobs or refuse in which the worms may have taken shelter and that a rule requiring corn to be cut within three inches of the ground and stalks and higher stubble to be snapped at the ground line, raked and burned or completely buried by plowing under, would tend to prevent the emergence of such moths and therefore tend to check and control the spread of the corn borer infestation. In view of the foregoing it is obvious that the regulations of the Department of Conservation were reasonably adapted to prevent the spread of the corn borer and to protect an important source of food supply. Consequently the regulations were valid and in its instructions to the jury the trial court should have assumed that the rules and regulations in question were lawful as applied to Jackson Township and the facts of this case.

The appellee contends that "the regulations relied upon as a defense for plowing up and destroying the oats crop and damaging the land, does not itself provide for or authorize such a course on the part of the officers." It is true that the regulations which became effective February 10, 1927, did not provide for the plowing of a field within an infested area by officers and employees of the Department of Conservation; but §2 of ch. 56, Acts 1927, p. 146, §4763.2, Burns Ann. Ind. St. Supp. 1929, §15-1402, Burns Ind. Stat. Ann. 1933, §3696 Baldwin's Ind. Ann. Stat. 1934, authorizes officers and employees of the Department of Conservation to carry out orders and instructions given the owner or person having charge of a farm, upon the latter's failure, refusal, or neglect to do so. Consequently, when the appellee refused to carry

out the orders of the Conservation Department, the Department had statutory authority to do the acts necessary to make the orders effective; and the defendants were under a duty to take steps either to collect and burn the corn stalks or to plow them under.

Granting the validity of the regulations of the Department of Conservation we have the situation in which a public official causes loss by doing an act presumably under legal authority. This involves the question of privilege for official acts which result in injury to property or person.

"The courts have developed a formula of the greatest importance for determining when a public officer acts within the privileges of his office and when he acts outside the privilege. This formula consists in the distinction between acts involving discretion on the part of the officer and acts purely ministerial in character. The distinction is important with respect to both absolute and conditional privilege, and the rule may be stated as follows: if the officer is engaged in performing a discretionary act, he is not personally liable to an individual in a civil suit for any errors, mistakes of judgment or unwise decisions that he may make in exercising his discretion, but if he is engaged in the performance of a duty purely ministerial in nature, he may be liable to an individual for the misperformance thereof. 'A public officer whose functions are judicial or quasi-judicial,' said the Wisconsin court,[4] 'can not be called upon to respond in damages for the honest exercise of his judgment within his jurisdiction, however erroneous his judgment may be.' On the other hand, when the officer misperforms a ministerial act the fact that it was done in an honest effort to perform his duty and without any malice or evil intent is no defense. When the act is ministerial, the officer acts at his peril, and if he performs it improperly, he is outside the protection of the privilege of public office and must answer as any other individual. Of course, where the privilege of the officer is conditional only, an

Note 4. *Lindeman* v. *Kenosha* (1932), 206 Wis. 364, 240 N. W. 373, 377, per Nelson, J.

improper purpose will defeat the defense of privilege even where the function performed is discretionary in character for the reason that the improper purpose makes it impossible for the officer to exercise an intelligent official 'discretion.' Where, however, the privilege is absolute, the purpose or motive of the officer is immaterial." Harper on Torts, §298, pp. 669, 670.

Appellants are officials who "act within the protection of a conditional privilege only."[5] Consequently if they injured appellee while performing a discretionary duty they were liable if the act which caused the injury was unauthorized or if it was done maliciously. Also, they were liable for injury occasioned by the misperformance of a ministerial act, even though the act was authorized and was performed in good faith. When appellee refused to obey the orders of the Department of Conservation the appellants were under a duty (1) to decide whether to collect the stalks and burn them or to plow them under and (2) to carry out this decision. In our opinion the first act was in the performance of a duty requiring the exercise of discretion and the second involved merely a ministerial duty.[6] Since it is clear that appellants had authority under valid regulations to elect which method to use in destroying the corn stalks and corn stubble they incurred no liability by deciding to plow appellee's field, at the time and in the manner selected, if they acted in good faith.[7] It was a question of fact for the jury whether they acted in good faith. But when appellants

*Note 5.* Harper on Torts, §298, p. 666.

*Note 6.* See *Tholkes* v. *Decock* (1914), 125 Minn. 507, 147 N. W. 648, and *McClellan* v. *Carter* (1923), 30 Ga. App. 150, 117 S. E. 118, holding respectively that repairing a road by overseers and dipping for eradication of cattle tick were ministerial acts.

*Note 7.* Where a public officer is charged with duties which call for the exercise of his judgment or discretion as to their propriety or the manner in which they are to be performed, he is not liable to an individual for damages unless guilty of wilful wrong. *Stevens* v. *North, etc., Inc.* (1925), 161 Minn. 345, 201 N. W. 435, 40 A. L. R. 36; *Schooler* v. *Arrington* (1904), 106 Mo. App. 607, 81 S. W. 468.

assumed the responsibility of plowing the field they were under a duty to properly plow the same; and they would be liable for any injury resulting from improper performance of this act. It was a question of fact for the jury whether the plowing was properly done.

In view of the foregoing the only questions of fact for the jury were whether the appellants acted in good faith in deciding to plow under the corn stalks and corn stubble and whether the plowing itself was done in a proper manner. And since the acts complained of were done by appellants in the course of official duty the appellants had the benefit of the presumption that they had properly performed their duty; and the burden was upon appellee to show the contrary by a preponderance of the evidence. The action of the trial court in sustaining appellee's demurrers to the 2nd and 3rd paragraphs of answer can not be reconciled with the foregoing; nor can many of the instructions which assumed that the validity of the regulations depended ultimately upon the jury's finding as a question of fact whether they were reasonable. A good example of this is found in instruction No. 4, which instructed the jury as follows:

> "I instruct you that if you find from the evidence that the defendants could with a reasonable amount of labor have gathered up the corn stalks on plaintiff's land and have destroyed them without resorting to the drastic measure of plowing up and destroying the crops then growing on plaintiff's land, it was their duty to adopt such course as would preserve such growing crops while accomplishing the result desired. In determining such matter you have the right to take into consideration the fact, if it is a fact that defendants did gather up and destroy the corn stalks on four acres of the lands and on which land they did not destroy the growing corn crop and the further fact, if it be a fact, that after the plowing of the plaintiff's land they were still required to gather up the stalks of such land.

"If from all the facts relating to this issue you find that the defendants were not reasonably justified in plowing said land then the defendants are liable for the actual damage caused by such plowing and your verdict should be for the plaintiff."

Judgment reversed with directions to the trial court to overrule appellee's demurrer to the 2nd and 3rd paragraphs of appellants' answer and for further proceedings not inconsistent with this opinion.