239 So.2d 840 (1969)
The FLORIDA CITRUS COMMISSION and Indian River Citrus League, Appellants,
v.
William E. OWENS et al., Appellees.
No. 1565.
District Court of Appeal of Florida, Fourth District.
November 26, 1969.
On Rehearing October 9, 1970.
*841 William P. Tomasello, Bartow, for appellant Florida Citrus Commission.
Monterey Campbell, III, of Tomasello, Campbell, Dunlap & Norris, Bartow, for appellant Florida Citrus Commission (on rehearing only).
Sherman N. Smith, Jr., of Smith, Heath, Smith & O'Haire, Vero Beach, and Counts Johnson, Tampa, for appellant Indian River Citrus League.
E. Snow Martin, of Martin & Martin, Lakeland, for appellee William E. Owens.
BARNS, PAUL D., Associate Judge.
The Florida Citrus Commission was a defendant to a suit in equity by the plaintiff-appellee, Owens, seeking an injunction enjoining the Commission from enforcing its regulations which regulations would prohibit Owens from marketing citrus fruit labeled, "Indian River" fruit. From a final decree granting the injunction, the Commission appealed. We affirm.
The appellants' attorneys on this appeal have failed and neglected to state in their briefs with the points argued any assignment of error giving rise to the point, as is their duty in compliance with F.A.R. 3.7(f) (4), 32 F.S.A., which rule requires that "Specific assignments of error from which the points argued arise should be stated, * * *." Reversal on appeal is not to be expected in the absence of judicial error of the lower court assigned, stated and argued in appellants' brief. Professional advocacy requires that the judicial errors relied on for reversal should be stated in the brief with points argued, even in the absence of a rule requiring it.
For some fifteen years Owens had been marketing citrus fruit grown in Range 39 E, near Indiantown in Martin County on the west side of the range line dividing Ranges 39 and 40, which citrus fruit was labeled, "Indian River" fruit. Indian River citrus fruit brings a premium price in the market because of its quality.
Of the eighteen assignments of error the points argued appear to come within the scope of two assignments, viz.: (1) that the lower court erred in its order denying the appellants' motions to dismiss the complaint; and (2) that the court erred in its final decree in favor of the plaintiff.
The appellants argue in support of the assignment that the court erred in denying appellants' motion to dismiss on the ground that the plaintiff-appellee is required to seek relief before the Florida Citrus Commission as provided by F.S. Section 601.12, F.S.A. The law applicable to this point as to the jurisdiction of a court of equity to entertain plaintiff's suit is answered by the law as stated in an attack on a zoning ordinance by a suit in equity reviewed in Village of Euclid, Ohio v. Ambler Realty Co., 1926, 272 U.S. 365, *842 47 S.Ct. 114, 117, 71 L.Ed. 303, 54 A.L.R. 1016, wherein it is stated:
"A motion was made in the court below to dismiss the bill on the ground that, because complainant [appellee] had made no effort to obtain a building permit or apply to the zoning board of appeals for relief, as it might have done under the terms of the ordinance, the suit was premature. The motion was properly overruled. the [sic] effect of the allegations of the bill is that the ordinance of its own force operates greatly to reduce the value of appellee's lands and destroy their marketability for industrial, commercial and residential uses, and the attack is directed, not against any specific provision or provisions, but against the ordinance as an entirety. Assuming the premises, the existence and maintenance of the ordinance in effect constitutes a present invasion of appellee's property rights and a threat to continue it. Under these circumstances, the equitable jurisdiction is clear. See Terrace v. Thompson, 263 U.S. 197, 215, 44 S.Ct. 15, 68 L.Ed. 255; Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468."
Owens could probably have sought relief by petition for writ of certiorari. The certiorari jurisdiction of a court is discretionary as distinguished from the obligatory jurisdiction of a court of equity when there is no plain, full, adequate and complete relief otherwise available. The lower court did not err in denying appellants' motions to dismiss the complaint; it was sufficient in substance to invoke the equity jurisdiction of the court, and plaintiff was not required to pursue administrative relief before seeking relief in equity. The distinctions in substance between law and equity in the federal and state systems of jurisprudence has not been affected by the new unified rules of pleading, practice and procedure. The circuit court's jurisdiction in suits in equity is conferred by Fla. Const. art. V, § 6(3), F.S.A.
The findings of fact by the Chancellor and his conclusions as set forth in his final decree are as follows:

CHANCELLOR'S FINDINGS AND CONCLUSIONS
"This is a suit for declaratory judgment and injunctive relief brought by [Owens] a citrus grower against the Florida Citrus Commission as a result of the adoption by the Commission of Amendment 36 to Regulation 105-1.03 and Amendment 4 to Regulation 105-1.09. The Prosecuting Attorney and Sheriff are joined as defendants in order to prevent the arrest and prosecution of the Plaintiff for violation of the Commission regulations.
"The Indian River Citrus League is a non-profit grower-owned and grower-controlled co-operative association without capital stock whose membership is composed of approximately 1650 growers engaged in the production of approximately ninety percent of the citrus fruit grown in the Indian River citrus area. It was permitted to intervene [as a party defendant]. * * *
"The Florida Citrus Commission proposed the adoption of the amendments cited above and published them June 22 and 23, 1966. A number of growers filed protests to the adoption of the amendments and a hearing was held before the Commission's attorney as hearing officer. This officer made findings and conclusions recommending that the protests be denied and that the amendments remain in full force and effect. Certain growers protested the proposed findings and conclusions and a hearing was held before the Commission on December 21, 1966, at which time the Commission adopted the findings, conclusions, and order recommended by the hearing officer and directed that the regulations become immediately effective. The Plaintiff herein was not a protestant in the proceedings before the Commission.
*843 "* * *
"Essentially this suit involves the problem whether the Florida Citrus Commission may by regulation prevent the Plaintiff from using what is, in effect, a form of common trademark or trade name, `Indian River'. It is clear from the evidence submitted in this case, all of which was presented by the Plaintiff, that citrus fruit labeled `Indian River' brings a premium upon the retail market. It is also clear that for fifteen years the Plaintiff has so labeled fruit and has built a substantial business as a result. Under these regulations as amended by the Commission, however, fruit grown upon Plaintiff's leased property could not bear the Indian River label and would be considered `Interior fruit'.
"In 1947 the Secretary of Agriculture of the United States entered an order establishing regulation areas one and two with respect to marketing agreements and the handling of oranges, grapefruit, and tangerines in Florida. Subsequently Federal marketing orders 905, 912 and 913 were entered by the Secretary similarly defining the two regulation areas. These orders do not, however, control the instant problem because they do not purport to limit or define the labeling of fruit. Under the regulations adopted by the Florida Citrus Commission, however, the labeling of fruit as Indian River Citrus would be limited to fruit grown in Federal regulation area two and the label interior citrus fruit would be limited to fruit produced in Federal regulation area one. Insofar as Martin County is concerned, the division between regulation areas one and two is the range line between ranges 39 and 40 east. That portion of the county lying east of the line would be permitted to use the Indian River label and that portion of the county lying west of the line would be restricted to the interior label. Plaintiff's grove lies in Range 39 East and is, accordingly, just west of the dividing line and outside the proposed Indian River area.
"It further appears from the evidence that prior to 1947 most of the citrus grown in Martin County was grown east of the line in question although the evidence discloses that Plaintiff's grove and another, called Bower grove, were in existence as early as 1906. The evidence further shows that subsequent to 1947 many additional acres west of the dividing line have been put into citrus production. The evidence presented by the Plaintiff included the testimony of the vice president and director of grove operations for Minute Maid Corporation who personally recommended and purchased 8,100 acres in Martin County west of the dividing line. It requires no particular insight to speculate that the movement of such a major citrus producer into the disputed area has precipitated the problem under consideration.
"The Plaintiff testified that for the past fifteen years he has been growing and selling in the Indiantown, Florida area upon property leased in Township 40 South, Range 39 East. Forty percent of his total income comes from gift shipping which is advertised as and bears the Indian River citrus label. If he is prohibited from using such a label he would lose the investment he has in his current inventory of boxes and advertising materials, would lose the premium price he obtains for his gift shipped fruit, and would lose the advantage he has in selling fresh fruit to retailers who prefer such fruit over Interior citrus. He acknowledges that the 50 percent of his income which is due to sales of fruit to concentrate plants would not be affected as the Indian River label does not increase the price obtained for this fruit. He testified that there is no difference in quality between his fruit and any other fruit grown in the Indian River citrus area as defined by the new regulations, that there is no change in the type of grove cultivation practices between his grove and the newly-defined Indian River area, that the same root stock is used, and that there is no geographic phenonema [sic] that takes place at the range line dividing the Indian *844 River area from the interior area in Martin County.
"The testimony of the vice-president and director of grove operations of Minute Maid disclosed that he has been experienced in citrus production for many years and that he supervises the production of citrus in twenty counties from Marion County on the north to Martin County on the south. To his knowledge the Indian River label brings a premium, the fruit produced in the western Martin County is identical with that produced in the eastern part of the county, that no geographic phenonema [sic] occurs at the dividing line, and that no area of Florida outside of regulation area two has ever used the Indian River citrus label except that portion of Martin County west of the dividing line.
"The record also disclosed that on April 29, 1955, a meeting of the Indian River Citrus League was held. The members in attendance discussed the new groves in the western part of Martin County and the question whether such groves should be included in their membership and permitted the privileges accruing thereby. The League voted unanimously to include these western Martin County citrus producers, to invite them into membership, to let them label their fruit as Indian River fruit, and to permit them to use their packing houses. It appears, however, from the intervention filed in this case and from the brief of the Indian River Citrus League, that the League has subsequently reversed its position. Now that twelve years have passed and growers such as Owens have taken advantage of the offer and have established themselves as Indian River citrus producers, the League feels that this western Martin County fruit should be deprived of the Indian River citrus label.
"Two questions which are inherent in this suit are (1) whether the Florida Citrus Commission had the authority to adopt regulations prohibiting growers in the western part of Martin County from using the name `Indian River' on their fruit and (2) whether, if the Commission had such authority, it abused its discretion in setting the dividing line where it did.
"An examination of Chapter 601 of Florida Statutes discloses that the authority given to the Florida Citrus Commission is basically in two general subject areas: First, the growing, harvesting, and processing practices, and second, the suppression of fradulent [sic] practices. The present regulations fit under neither category as they do not purport to regulate the growing, harvesting, or processing of the fruit and nothing sought to be done by Owens (or that has been done by him in the past) is alleged to be fraudulent [sic]. To say that Owens would be committing a fradulent [sic] act to describe his fruit as Indian River begs the question because this would be unlawful only if the regulation itself is valid. If Owens's fruit is, in fact, grown in the Indian River area, and if the Commission has no authority to define him outside of the Indian River area, then his labeling of the fruit as Indian River could not be fradulent [sic]. Owens has no objections to the prohibition of labeling fruit which is not Indian River fruit as such. Rather, his objection is in the determination of what is properly labeled as Indian River fruit.
"Section 601.641(2) makes unlawful false claims as to `grove origin' among other things. This is inapplicable to the instance [sic] situation since Owens is not falsifying the grove origin of his fruit. He has never claimed that his fruit was grown anywhere other than upon his own grove in western Martin County.
"Section 601.10(7) gives power to the Commission to adopt certain rules and regulations pertaining to the growing, harvesting, and processing of the fruit. Nothing in this section pertains to labeling.
"Section 601.11 gives the Commission authority to enact regulations governing the labeling of citrus fruit and products `for the purpose of showing the name and address of the person marketing such citrus fruit *845 or products thereof whether canned or concentrated or otherwise processed.' Nothing in the section permits the designation of areas which may bear an established common trade name such as Indian River. Even if this grant could be implied, no guidelines are established for the adoption of such regulations. It is settled law that the legislature may not delegate the power to legislate to an administrative commission but may only authorize regulations implementing legislatively established policies.
"Section 601.99 refers to false or misleading statements as to name, size, quality, or brand, which is not the problem involved here, or as to locality in which fruit was grown. The last item is not in point as Owens is not seeking to mark his fruit as grown anywhere else except upon his grove in Indian Town.
"* * *.
"The Federal Marketing Order cited above, and from which the commission apparently obtained the dividing line, are immaterial to this cause as they do not purport to regulate the labeling of fruit. In addition, Owens has been doing for years what he seeks to continue doing now and has never been charged with being in violation of the Federal Acts. Even if he were in violation of the Marketing Order, this would be a matter for the Federal Government and not for the State.
"Accordingly, it appears that the Florida Citrus Commission has no power to enact a regulation which will deprive Owens of his existing use of the valuable trade name `Indian River'.
"Even if it should be determined that Chapter 601 gives the Florida Citrus Commission power to regulate the use of the Indian River label, the Commission grossly abused its discretion in arbitrarly [sic] drawing the dividing line at a point which will exclude Owens from continuing his fifteen years practice of labeling and marketing his fruit as Indian River. The discretion given to the Commission, if any, must be based upon reasonable grounds and is not absolute. The sole evidence in this case discloses no basis whatever for the selection of the dividing line other than the fact that this line was utilized in the Federal Marketing Orders entered by a different government, for a different purpose, at a different time (over twenty years ago).
"The Commission presented no evidence at the trial of the instant case. For the purpose of this lawsuit between Owens and the Commission, the evidence presented by Owens must be binding upon the Court. This evidence shows without doubt that the fruit grown by Owens is identical to the fruit grown east of the dividing line in all essential aspects. It would appear that the reversal of position taken by the Indian River Citrus League at the hearing before the Commission, when it urged that the western Martin County growers be excluded from the district, prevailed over the evidence submitted regarding quality of the fruit.
"The Indian River Citrus League makes the argument that certain acts of the Legislature define the Indian River Citrus Area and exclude the western part of Martin County. It appears that Chapters 20831, 20832, 20833 and 20834 were all enacted by the 1941 Legislature and pertain to this matter. The latter three were passed as special acts involving Brevard, St. Lucie, and Indian River counties. Chapter 20831 was enacted as a general law, upon a population basis, and included all of Martin County in the Indian River Citrus Area. This act was repealed in 1961 as the population of Martin County had exceeded the limits of the act and the bill was no longer applicable to any county. The other three acts also defined the Indian River Citrus Area but the description of the Indian River portion of Martin County was "all of that part of Martin County east of range line 39 East.' This description is fatally defective as it leaves in doubt whether the line in question is the east or west line of Range 39 East. These three acts were not included *846 in the 1949 General Revision of Florida Laws and have been omitted thereafter. They also appear to be in violation of Section 20 of Article 3 of the Florida Constitution, which prohibits the passage of special or local laws for the punishment of crime or misdemeanor, since the three acts attempt to make it a criminal offense to bring fruit into any particular county and ship it out as Indian River fruit unless it was produced in the area defined in the acts. Accordingly it appears that Chapters 20832, 20833 and 20834 either never were valid or have subsequently been repealed.
"It should be pointed out that this decision will not open the door to the Indian River area to any and all who wish to use the label. This is a lawsuit between Owens and the Florida Citrus Commission and the law established by this case will be directly applicable only to the parties to the suit. The decision is based in part upon a preexisting use of the Indian River label by Owens. To the extent that this decision determines that it was a gross abuse of discretion for the Florida Citrus Commission to establish a line which excludes Owens, it will be applicable only to the persons who fit into the same factual situations as Owens. That is, such persons must have previously used the Indian River label and established a business by virtue of this valuable property right.
"Further, nothing in this decision deprives the Florida Citrus Commission of the power to require growers to engage in certain growing, harvesting, or processing practices to protect the quality of the fruit. And finally, nothing prohibits the commission from stopping fraudulent practices in the marketing of citrus. For the foregoing reasons
"IT IS ORDERED, ADJUDGED, AND DECREED THAT:
"(1) Amendment 36 to Regulation 105-1.03 and Amendment 4 to Regulation 105-1.09 be and are the same hereby declared invalid and unenforcable [sic] as to the Plaintiff William E. Owens * * *."
Each title to Chapters 20832, 20833 and 20834, Laws of 1941, begins with the words, "An Act to define the boundaries of the Indian River Citrus Area of the State of Florida", and Section 1 of each Chapter reads:
"Section 1. That the Indian River Citrus Area is hereby defined and designated to be that territory lying along the East Coast of the State of Florida, within those parts of the counties of Volusia, Brevard, Indian River, St. Lucie, Martin and Palm Beach bordering on the Indian Rivers and their natural connections or tributaries, more particularly distinguished and described as follows: to-wit: all of County Commissioner's Districts Four (4) and Five (5), as shown on the Public Records of Volusia County; all of that part of Brevard County lying east of the St. Johns River and Range 35 East, the point of beginning of said range line being and extending south from Township line 27 South to the south line of said county of Brevard; all of that part of Indian River County east of range line 36 East; and all of St. Lucie County; and all of Martin County [east of range line 39 East]; and all of that part of Palm Beach County east of range line 40 East and North of the West Palm Beach canal."
The above-mentioned chapters were of limited application to Brevard, St. Lucie and Indian River counties, hence were not repealed by adoptions of the Attorney General's revisions since 1941 of the Florida Statutes. The legislature specifically directed that such revisions "shall not" deal with such statutes concerning one or more counties or operative in only a portion of the state when not related to state or county courts; Section 16.44(4) Florida Statutes 1941, § 16.44(7) (h), Florida Statutes 1965, § 16.44(6) (k), "without effecting a repeal thereof".
*847 The amendments to the Regulations of the Florida Citrus Commission (effective June 23, 1966) are § (1) (h), Regulation 105-1.09 and § 7 (a) and (b) Regulation 105-1.03, as they appear in the footnote[1] and capitalized.
*848 The amendments effective June 23, 1966, are legislative in nature and in the category of an exercise of the police power of the state to prevent fraud. When a commission promulgates a legislative regulation in the exercise of the police power delegated to it by the legislature, it is subject to the same test as to reasonableness and the basic facts justifying the regulation as would be applied if the legislature had enacted the regulation as a statute. As stated in Crescent Cotton Oil Co. v. State of Mississippi, 1921, 257 U.S. 129, 137, 42 S.Ct. 42, 44, 66 L.Ed. 166:
"* * * [A]ny classification adopted by a state in the exercise of this [police] power which has a reasonable basis, and is therefore not arbitrary, will be sustained against an attack based upon the equal protection of the laws clause of the Fourteenth Amendment, and also that every state of facts sufficient to sustain such classification which can be reasonably conceived of as having existed when the law was enacted will be assumed. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 Sup.Ct. 337, 55 L.Ed. 369, Ann.Cas. 1912C, 160, and cases cited; Rast v. Van Deman & Lewis Co., 240 U.S. 342, 36 Sup.Ct. 370, 60 L.Ed. 679, L.R.A. 1917A, 421, Ann.Cas. 1917B, 455."
The "equal protection of the laws" clause of the Fourteenth Amendment to the Constitution of the United States, as applied to legislative classifications may be summarized by a quotation from the 1964 Annotations (page 1284), based on the decisions of the Supreme Court of the United States, to the Constitution of the United States, as published by the Library of Congress, as follows:
"Although the equal protection clause requires laws of like application to all similarly situated, the legislature is allowed wide discretion in the selection of classes. Classification will not render a State police statute unconstitutional so long as it has a reasonable basis; its validity does not depend on scientific or marked differences in things or persons or in their relations. It suffices if it is practical. While a State legislature may not arbitrarily select certain individuals for the operation of its statutes, a selection is obnoxious to the equal protection clause only if it is clearly and actually arbitrary and not merely possibly so. A substantial difference, in point of harmful results, between two methods of operation, justifies a classification and the burden is on the attacking party to prove it unreasonable. There is a strong presumption that discriminations in State legislation are based on adequate grounds. Every state of facts sufficient to sustain a classification which can reasonably be conceived of as having existed when the law was adopted will be assumed."
The findings of the chancellor and the evidence on which his findings are based overcome the assumption that there is a reasonable basis for the regulation, as applied to Owens, prohibiting him from continuing to market his fruit as Indian River citrus fruit produced in Sections 6 and 7, Range 39 East, Township 40 South, in Martin County; the regulations complained of as applied to Owens are unreasonably arbitrary since they are not supported by a reasonable basis; the groves from which he produces his fruit are not so remote from the Indian River citrus area as to tend to mislead or deceive buyers as to origin or the quality of his fruit when marketed as such.
The decree appealed from is affirmed, as modified by this opinion.
Affirmed.
OWEN, J., concurs.
*849 McCAIN, J., dissents, with opinion.
McCAIN, Judge (dissenting).
I must respectfully dissent for the following reasons:
1. The plaintiff-appellee failed to pursue his administrative remedies under F.S. 601.12, F.S.A. before seeking judicial relief. I can only conclude the appellee made a special, rather than general, attack, upon the citrus regulations, which should have been presented first to the commission. De Carlo v. Town of West Miami, Fla. 1950, 49 So.2d 596; Morrison v. Plotkin, Fla. 1955, 77 So.2d 254; Stewart v. Stone, Fla. 1961, 130 So.2d 577; Ferris v. Board of Public Instruction of Sumter County, Fla. App. 1960, 119 So.2d 389.
2. The Commission's resolutions under attack were based upon its authority to implement, interpret and make provisions safeguarding against misrepresentations of the locality in which citrus is grown or false claims as to grove origin, and not upon its authority to establish quality standards. Appellee did not challenge this but asserted objections merely to the determination that his grove did not lie within the Indian River area or locality. When the trial court found no features to distinguish the quality of fruit grown on either side of the area line, and therefore no basis for the selection of the boundary, error was committed by a determination of a matter not in issue, i.e., the Commission's power and authority to regulate labeling. At issue were rules regulating deceptive practices and not ones regulating quality standards. State v. Atlantic Coast Line R. Co., 1908, 56 Fla. 617, 47 So. 969; 1 Fla. Jur., Administrative Law, § 97; F.S. 601.99, 601.641(2), and 601.10(1), (2) and (7), F.S.A.; Hutchins v. Mayo, 1940, 143 Fla. 707, 197 So. 495, 133 A.L.R. 394.
Accordingly, I would reverse and remand the cause with directions that a final judgment be entered dismissing the cause.

ON REHEARING
PER CURIAM.
A rehearing having been granted in this cause and the cause having been further considered upon the record and upon briefs and argument of counsel for the respective parties, it is thereupon ordered and adjudged by the court that the court's opinion, filed on November 26, 1969, in this cause be and the same is hereby reaffirmed and adhered to on rehearing.
OWEN, J., and BARNS, PAUL D., Associate Judge, concur. McCAIN, J., dissents.
McCAIN, Judge (dissenting).
I adhere to the views expressed in my dissent in the opinion which was filed on November 26, 1969.
NOTES
[1] "REGULATION 105-1.09

"LOADING MANIFESTS TO BE FURNISHED TO THE INSPECTOR-FRESH CITRUS FRUIT
"Sec. (1) Every shipper of citrus fruit shall deliver to the inspector a copy of the loading manifest on every shipment of citrus fruit made by said shipper, which manifest shall show:
(a) Name of shipper;
(b) Date of shipment;
(c) Grade of fruit;
(d) Type of fruit, (oranges shall be classified as early, midseason, late, Murcott, or Temple type; grapefruit shall be classified as seeded, pink seeded, seeedless, or pink seedless type);
(e) Kind and size of containers;
(f) Itemized list of sizes for each grade, type of fruit and kind of container, (in case of bulk fruit, sizes shall be estimated by the inspector and shipper together and such estimate placed on the manifest);
(g) If oranges are color added, (if fruit is packed for intrastate shipment, destination of said fruit shall be shown);
(h) IF CITRUS FRUIT IS PACKED IN A DIFFERENT REGULATION AREA FROM THAT IN WHICH GROWN. (DEFINITION OF REGULATION AREA SHALL BE THE SAME AS USED TO DEFINE REGULATION AREAS 1 and 2 IN THE FEDERAL MARKETING AGREEMENT AND ORDER #905, REGULATING GRADE AND SIZE IN THE INTERSTATE SHIPMENT OF FLORIDA FRESH CITRUS. (Emphasis added.)
Sec. (2) If fruit is packed for export, the manifest shall show if for commercial export or export by a government agency, and shall show the name of the port of embarkation.
Sec. (3) These manifests shall be sent daily by the inspector with the inspection certificate to the Office of the Inspection Department. In case of the failure of any shipper to furnish the inspector with copies of the loading manifests, the inspector shall refuse to furnish certificates of inspection until such manifests have been delivered to him.
"REGULATION 105-1.03
"* * *
"Sec. (5) Misbranding of fruit or containers. The following practices in handling citrus fruit grown in the State of Florida are unlawful and shall subject the offender to penalties established by the Florida Citrus Code.
(a) Application of any word, phrase or descriptive design to the skin of any citrus fruit which indicates that the fruit was grown in a particular locality, when, in fact, such citrus fruit was not grown in that particular area or locality.
(b) To sell or offer for sale, or ship or offer for shipment any citrus fruit when the individual fruit or the package or the wrapper or the container thereof bears any statement, design or device regarding the fruit therein contained which is false or misleading either as to the name, size, quality or brand of such fruit or as to the locality in which it was grown.
(c) To sell or offer to sale, or ship or offer for shipment, any citrus fruit in a container which bears a statement as to the contents of the container in terms of avoirdupois weight, standard packed boxes or bushels or a fractional part thereof, or any other unit of measurement, when such container does not contain the minimum amount of fruit so stated.
Sec. (6)
(a) CITRUS FRUIT OR THE CONTAINERS THEREOF, OFFERED FOR SALE OR SHIPMENT, WHICH BEAR ANY STATEMENT, DESIGN, OR DEVICE WHICH IDENTIFIES THE SAID FRUIT AS `INDIAN RIVER' CITRUS FRUIT, SHALL HAVE BEEN PRODUCED ON GROVES LOCATED IN THE INDIAN RIVER CITRUS DISTRICT OR AREA OF FLORIDA AS DESCRIBED IN FEDERAL MARKETING ORDER NO. 905 AND DESIGNATED BY THE SAID ORDER AS REGULATION AREA 2. (Emphasis added.)
(b) CITRUS FRUIT OR THE CONTAINERS THEREOF OFFERED FOR SALE OR SHIPMENT WHICH BEAR ANY STATEMENT, DESIGN OR DEVICE WHICH IDENTIFIES THE SAID FRUIT AS `INTERIOR' CITRUS FRUIT SHALL HAVE BEEN PRODUCED ON GROVES LOCATED IN THE INTERIOR CITRUS DISTRICT OR AREA OF FLORIDA AS DESCRIBED IN FEDERAL MARKETING ORDER 905 AND DESIGNATED BY THE SAID ORDER AS REGULATION AREA 1." (Emphasis added.)