INDIANA ENVIRONMENTAL MANAGEMENT BOARD and Air Pollution Control Board of the State of Indiana, Appellants (Defendants Below),

v.

INDIANA–KENTUCKY ELECTRIC CORPORATION, Indiana & Michigan Electric Company, Indiana Statewide Rural Electric Cooperative, Inc., Indianapolis Power & Light Company, Northern Indiana Public Service Company and Public Service Company of Indiana, Inc., Appellees (Plaintiffs Below).

No. 2–576A180.

Court of Appeals of Indiana, Second District.

Aug. 20, 1979.

Rehearing Denied Oct. 16, 1979.

Theodore L. Sendak, Atty. Gen., Michael Schaefer, Asst. Atty. Gen., Indianapolis, for appellants.

Jerry P. Belknap, Jon D. Noland, Bryan G. Tabler, Indianapolis, for appellees; Charles W. Campbell, Plainfield, Schroer, Eichhorn & Morrow, Hammond, Livingston, Dildine, Haynie & Yoder, Fort Wayne, Parr, Richey, Obrenskey, Pedersen & Morton, Lebanon, Marcus E. Woods, Barnes, Hickam, Pantzer & Boyd, Indianapolis, of counsel.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Appellants Indiana Environmental Management Board (EMB) and the Indiana Air Pollution Control Board (APC) (hereinafter jointly referred to as "Agencies"), appeal from a summary judgment in favor of appellees Indiana-Kentucky Electric Corporation, et al. (Utilities), which invalidated several regulations enacted by the EMB and APC for failure to make sufficient findings and recommendations in rule-making, claiming those procedures were unnecessary, and the judgment was contrary to law.

We affirm in part and reverse in part.

## FACTS

The EMB was created by the Indiana Environmental Management Act, Ind.Code 13–7–1–1, and given the responsibility of developing a long-range plan to guarantee the best possible air, water and land quality for the state.[1] In that capacity, the EMB oversees the activities of the APC (which was vested with specific authority to safeguard the air resources of this state), Ind. Code 13–1–1–1, *et seq.*, and must approve all actions taken by it.

Pursuant to its statutory mandate, and in fulfillment of the requirements of the federal Clean Air Act Amendments of 1970,[2] the APC enacted a series of regulations ("old" APC–13, APC–14, APC–17, APC–19, APC–22, and "new" APC–13) between 1972 and 1974 which limited various industrial waste emissions including sulphur dioxide and nitrogen dioxide. These regulations became part of Indiana's implementation plan to achieve the air quality goals established by the Congress in the federal act.

On June 27, 1973, six Indiana electric generating utilities (Utilities) commenced this cause by filing a complaint for a declaratory judgment and an injunction against the EMB and APC, seeking to nullify APC–13, APC–14, APC–17 and APC–19 because the APC had failed to comply with procedural requirements in promulgating these regulations, and because the regulations were technologically impossible to comply with.

On February 19, 1975, an amended complaint was filed by the Utilities which similarly attacked a newer version of APC–13 ("New" APC–13)[3] and APC–22 because of the Agencies' failure to comply with applicable procedural requirements in enacting those regulations.

On February 20, 1975, the Utilities filed the following motion for summary judgment:

> Plaintiffs move the Court for a summary judgment determining that Regulations APC 13, APC 14, APC 19 and APC 22 as adopted by defendant Air Pollution Control Board of the State of Indiana and, in the case of APC 13, APC 19 and APC 22, approved by defendant Indiana Environmental Management Board, are invalid because administrative action in so adopting and approving such Regulations did not comply with the procedures prescribed by law.

> This motion is based upon defendants' Response to Plaintiffs' Request for Admissions, filed herein on or about February 21, 1974, and the attached affidavit of Bryan G. Tabler, which establish that the record made by defendants of their action in adopting and approving these regulations shows that neither defendant made any finding or other record with respect to what consideration they gave to matters which they are required by law to take into account in so adopting or approving rules and regulations.

---

1. See Note, The Indiana Environmental Protection Agencies: A Survey and Critique, 10 Ind. L.R. 955 (1977).

2. 42 U.S.C. § 7401 *et seq.*

3. Although New APC–13 replaced Old APC–13, the Environmental Protection Agency refused to accept the newer regulation for five northern Indiana counties. Therefore, "Old" APC–13 arguably may have continued to have practical and de facto, if not de jure, effect in those areas as a minimum standard for clean air.

There is no genuine issue as to this material fact and plaintiffs are entitled to the judgment as a matter of law.

On March 25, 1975, the Utilities again amended their complaint to include "Old" APC–13 because of its continued enforcement by the Environmental Protection Agency in several Indiana counties, and again sought summary judgment because the state APC did not comply with the procedures prescribed by law in adopting this rule.

It was uncontroverted that the APC had dispatched a single member to conduct the evidentiary hearing for several of the proposed regulations that was required by statute (Ind.Code 13–7–7–1), and that at the conclusion of those hearings the member had made no findings or recommendations to the full board regarding those regulations. Similarly, it was uncontroverted that the APC had made no findings of fact nor had it filed an environmental impact statement before enacting these regulations. Consequently, on November 10, 1975, the trial court entered the following judgment:

The Court having heretofore taken the cause under advisement the parties having fully advised the Court by briefs and oral argument, the Court now finds for the plaintiffs and against the defendants on the plaintiffs' motion for summary judgment. Plaintiffs' motion is granted as follows:

Regulations APC–13, including "Old" APC–13, APC–14, APC–19 and APC–22 are hereby declared invalid for failure to comply with the proper procedural requirements in violation of the limitations of the Indiana statutes governing the adoption of these rules and regulations. The specific violations are as follows:

1.) That the individual agency member presiding at the hearings held prior to the adoption of these rules and regulations failed to file the required findings and recommendations.

2.) That the agency failed to file the required environmental impact statement, and finally,

3.) That the agency or board failed to make findings of fact as to each of the factors set forth in Ind.Code 13–7–7–2(b).

IT IS THEREFORE ORDERED that the Motion for Summary Judgment of Plaintiffs Indiana-Kentucky Electric Corporation, et al., be and the same is hereby granted in accordance with the above decree. Further, the defendants are hereby enjoined from further enforcement of these regulations.

## ISSUES

The EMB and APC raise these issues:

1. Were the regulations invalid because of the hearing officer's failure to make findings and recommendations after holding a hearing?

2. Did the Utilities fail to exhaust their administrative remedies before seeking relief through the courts?

3. Was the controversy regarding "old" APC–13 moot?

4. Should the EMB and the APC be required to "take into account" the factors listed in Ind.Code 13–7–7–2(b) before promulgating "clean air" regulations.

## DECISION

*ISSUE ONE*—Were the regulations invalid because of the hearing officer's failure to make findings and recommendations after holding a hearing?

*PARTIES' CONTENTIONS*—The Agencies initially object to the trial court's finding that the agency's hearing officer failed to make the statutorily required findings of fact claiming that there is insufficient evidence in the record to support such a finding. Further, they claim that such a finding is improper since it was not raised by the Utilities in their Motion for summary judgment.

The Utilities reply that their motion for summary judgment attacks all procedural deficiencies in the enactment of these regulations. Additionally, they claim that al-

though Indiana statutes allow the EMB to dispatch a single member to conduct hearings on proposed regulations, it also requires that such member make findings and recommendations to the full board. Ind. Code 13–7–7–1. As the interrogatories and affidavits indicate this was not done, the regulations were properly struck down.

CONCLUSION—"Old" APC–13, "New" APC–13, and APC–19 were properly invalidated because the hearing officer failed to make the required findings and recommendations.

In the grand statutory scheme of the Indiana Environmental Management Act (Ind. Code 13–7–1–1 to 13–7–18–1) to "provide for . . . policies for comprehensive environmental development and control on a statewide basis,"[4] the EMB and APC were given the authority to adopt regulations and standards (Ind. Code 13–7–7–1(c)). This provision allows any such board to designate a single member to conduct a hearing as to any proposed regulation and make a report to the board of his findings and recommendations. The exact language is:

> (c) The board, or an agency with the approval of the board, may designate by resolution a single member of the board or agency, or any other individual, to hold a hearing on behalf of such board or agency, on rules of procedure, regulations or standards, or enforcement, or any other hearing. Any such *person so conducting a hearing shall report to the board his findings and recommendations, and the appropriate order thereon shall be entered by the board or agency after review.* [IC 1971, 13–7–7–1, as added by Acts 1972, P.L. 100, § 1, p. 555.] (emphasis supplied).

By the terms of this statute, the Agencies are granted some flexibility in the manner

they conduct hearings, but if they do use a single member, it is mandatory ("shall report") that findings and recommendations be submitted to the full board. The stated intent is to assure public impact on proposed regulations so that adequate consideration be given thereto by the full board. Ind.Code 13–7–7–4.

■ The Agencies concede that no such findings were made in the adoption of "Old" APC–13, and further admit in their answer to the Utilities' Interrogatories that no such findings or recommendations were made as to "New" APC–13 or APC–19. So there is no material issue of fact as to these regulations and the Utilities were entitled to judgment as a matter of law, as entered by the trial court. TR. 56.[5] However, the record discloses no such error in the adoption of APC–14 and APC–22, and the judgment invalidating these regulations upon this basis should be reversed.

ISSUE TWO—Did the Utilities fail to exhaust the administrative remedies available to them?

PARTIES' CONTENTIONS—The Agencies contend that the trial court did not have jurisdiction in this case because the Utilities failed to exhaust their administrative remedies before resorting to the judicial process.

The Utilities respond that no adequate administrative remedies exist, and thus resort to the courts was proper.

CONCLUSION—This action is not barred for failure to exhaust administrative remedies.

The Agencies bark up a non-existent tree.

■ Neither the Administrative Adjudication Act (AAA), *Ind. Code* 4–22–1–1 *et seq.*, which is not applicable to rule-making,[6] nor the statute governing Administra-

---

4. Ind. Code 13–7–1–1.

5. Nor do we find merit in Agencies' claim that the Utilities' motion for summary judgment did not raise this failure to make a report as a basis for judgment. The Utilities' motion attacks the alleged procedural deficiencies in the promulgation of these rules and is broad enough to

include this failure. That motion combined with the accompanying affidavit was sufficiently explicit to disclose the error.

6. *Ind.Code* 4–22–1–2 reads as follows in relevant part:

> "Administrative adjudication" means the administrative investigation, hearing and de-

tive Rules and Regulations, *Ind. Code* 4–22–2–1 *et seq.,* are applicable. Likewise barren of any such remedy are the environmental statutes creating the EMB and the APC. *Ind. Code* 13–7–1–1 *et seq.; Ind. Code* 13–1–1–1 *et seq.*

Nevertheless, the Agencies suggest that the Utilities should have complied with *Ind. Code* 13–7–7–6 before resorting to the courts. That statute reads as follows:

> Whenever any person who is affected by any regulation or standard established by the board or an agency deems the imposition of such regulation or standard to him would impose an undue hardship or burden upon him, such person may apply to the board or appropriate agency for a variance from such regulation or standard. The board or an agency may hold a hearing upon the application. If the board or an agency determines that immediate compliance with any regulation or standard would impose an undue hardship or burden upon the applicant, the board or agency may grant a variance from the regulation or standard for any period not exceeding one [1] year. [IC 1971, 13–7–7–6, as added by Acts 1972, P.L. 100, § 1, p. 555.]

■ This argument, that a party must seek a variance before resorting to judicial review of an ordinance, although novel in this context, has been used repeatedly by government agencies in zoning cases with little success. The courts in such cases have consistently held that one need not seek a variance if the attack is upon the basic validity of the ordinance. *Indiana Toll Road Commission v. Jankovich* (1963), 244 Ind. 574, 193 N.E.2d 237; *State v. St. Joseph Probate Court* (1958), 238 Ind. 103, 148 N.E.2d 561.

This statute neither allows for permanent relief, nor does it provide for a meaningful review of the validity of the regulation.

■ Similarly we reject the Agencies' contention that *Ind. Code* 13–7–7–3, which reads as follows:

termination of any agency of issues or cases applicable to particular persons, *excluding,*

Any person may present written proposals for the adoption, amendment, or repeal of regulations or standards. Any such proposal shall be supported by a statement of reasons and accompanied by a petition signed by at least two hundred [200] persons. If the board finds the proposal is not plainly devoid of merit, and does not deal with a subject on which a hearing was held within the previous six [6] months of the submission of the proposal, it will give notice and hold a hearing thereon.

is a required administrative review step before judicial review may be sought.

It is obvious from the language of this statute that it was intended as a means for the public to make policy suggestions, not as an administrative review procedure.

*ISSUE THREE*—Is the controversy regarding "old" APC–13 moot?

*PARTIES' CONTENTIONS*—The Agencies contend that any controversy regarding "old" APC–13 is moot because it was repealed by "new" APC–13.

The Utilities reply that "old" APC–13 was originally part of Indiana's clean air implementation plan submitted to and approved by the Environmental Protection Agency (EPA). Although "old" APC–13 has been replaced by "new" APC–13, the Environmental Protection Agency (EPA) has not approved the newer version in five northern Indiana counties and it still enforces the older regulation. As Federal courts have refused to consider the validity of that "state-accepted" regulation, the only appropriate means of review is through the State courts.

*CONCLUSION*—The controversy regarding the adoption of "old" APC–13 is not moot.

The Federal government required the passage of clean air standards by the states under the Federal Clean Air Act, 42 U.S.C. § 7401 *et seq.* Unless each State adopts a suitable plan to control air pollution, the

however, *the adoption of rules and regulations;* (Emphasis Supplied).

Federal government will establish regulations to be applied in that State, 42 U.S.C. § 7410(a)(1). Pursuant to this Act the EMB adopted standards including "old APC–13, which was approved and became enforceable under federal law. 42 U.S.C. § 1857d(c)(4)(i). Any attempt to amend the State "implementation plan" must be approved by the Federal government before the EPA will be bound to it. 42 U.S.C. § 7413.

Evidence presented indicates that although the EPA approved the amendment of "old" APC–13 for most Indiana counties, it retained "old" APC–13 in five counties. In these latter counties the former regulation is still part of Indiana's "applicable implementation plan" and is enforced by the EPA.

In *Indiana & Michigan Electric Company v. E.P.A.* (7th Cir., 1975) 509 F.2d 839, the federal Court of Appeals refused to review the validity of "clean-air" regulations which were adopted by this state. The Court indicated that prior to enforcement proceedings, (when fines totalling hundreds of thousands of dollars might be levied), the only method to attack these regulations for procedural improprieties must be through the state courts.

■ Therefore, we must conclude that the issue of "old" APC–13's validity was properly before the trial court, the issue was fully litigated, and the trial court had the authority to enter judgment as it did.

*ISSUE FOUR*—Should the EMB and the APC be required to "take into account" the factors listed in Ind. Code 13–7–7–2(b) before promulgating "clean air" regulations.

*PARTIES' CONTENTIONS*—It is the Agencies' position that it was error for the trial court to rule that findings of fact are necessary before the Agencies could promulgate regulations because the Agencies were engaging in legislative decision-making which is not reviewable. Thus, they argue, because these regulations are actually a manifestation of their legislative function, no findings are necessary.

■ The Utilities reason that the legislature has created a procedural step that must be complied with before promulgating rules concerning the environment even if that rule-making function is essentially legislative. Further, they reply that the courts always have the inherent power to review all administrative actions, and that to facilitate this review, the Agencies should be required to make findings of fact to support their conclusion.

*CONCLUSION*—The EMB and APC were required to "take into account" various factors before enacting regulations regarding the environment.

The lamp that guides our feet in determining if the EMB and the APC properly approved regulations concerning the environment is Ind. Code 13–7–7–2(b):

> (b) In *approving regulations* and establishing standards, *the board or an agency shall take into account* all existing physical conditions and the character of the area affected; past, present and probable future uses of the area, including the character of the uses of surrounding areas; zoning classifications; the nature of the existing air quality or existing water quality, as the case may be; *technical feasibility,* including the quality conditions that could reasonably be achieved through coordinated control of all factors affecting the quality; *and economic reasonableness of measuring or reducing any particular type of pollution.* The board and the agencies *shall take into account* the right of all persons to an environment sufficiently uncontaminated as not to be injurious to human, plant, animal or aquatic life, or to the reasonable enjoyment of life and property. (emphasis supplied) (2(b) hereafter).

Recognizing that words are little creatures waiting to do their master's bidding in a given context, it is our duty to ascertain the meaning intended by the legislature in requiring that certain factors be "taken into account" before any regulations could be promulgated.

The parties have variously characterized the statutory demand of "shall take into account", as making "findings", "documenting evidence", or "creating an administrative record", thereby creating some confusion.

If taking into account means "findings of fact" as that term is used in the quasi-judicial role of administrative agencies, then [they] ". . . must contain all the specific facts relevant to the contested issue or issues to that the court may determine whether the Board has resolved those issues in conformity with the law." *Whispering Pines Home for Senior Citizens v. Nicalek* (1975), Ind.App., 333 N.E.2d 324, 326.

Attributing to the phrase "taking into account" its plain, ordinary and usual meaning, as we are bound to do (Ind. Code 1971, 1–1–4–1), we must construe the legislative intent to be that the EMB or APC is required to supply meaningful supporting data concerning the relevant factors listed so that the courts and interested parties may be informed of the basis of the Agencies' action in taking "into account" the factors listed in the statute. Our use of the word "data" (rather than findings) in describing the relevant factors to be stated is intended to be in the broadest sense possible, including information in whatever form it may be available.

Our conclusion that such supporting data as to the relevant factors must be supplied is bolstered by the Illinois case of *Commonwealth Edison Company v. Pollution Control Board* (1974), 25 Ill.App.3d 271, 323 N.E.2d 84, in which the Illinois Pollution Control Board was required to

". . . *take into account* the existing physical conditions, the character of the area involved, * * * the nature of the existing air quality, * * * and the technical feasibility and economic reasonableness of measuring or reducing the particular type of pollution." (emphasis supplied)

Ill.Rev.Stat., 1971, Ch. 111½, par. 1027, before enacting regulations.

Although the Illinois Pollution Control Board accompanied their "clean-air" rules and regulations with an explanatory opinion entitled, "In the Matter of Emission Standards" (# R.71–23), the Illinois court nevertheless struck them down because the supporting material did not give the court sufficient basis to decide if the regulations were reasonable. The Court said at 323 N.E.2d at 95, 96:

From our reading of the record, *we are unable to state that the Board took into account* the technical feasibility of these rules. In so ruling, *we are not commenting on the wisdom of the rules.* That is not our province. Without any evidence that the needed systems are beyond the conceptually workable stage of development, it cannot be said that the Board's rules rest upon any evidence of statutory compliance. . . .

We further hold that there is *no evidence that the Board took into account the economic reasonableness of these rules* for a substantial number of the generating units in this state. The testimony at the hearings indicated the cost of the sulfur removal systems would be great. Rather than presenting a formula indicating a balance between cost and pollution control or giving some concrete cost projections, the Board in its opinion offered general statements that there must be a "balancing [of] the benefits of the contemplated rule against its cost" and that greater costs may be needed to be absorbed "when the need for pollution abatement is greater."

This court, whenever possible, will approve actions taken by the expert administrative agencies in this state charged with the public trust to cleanse our environment. . . . However, *we must also scrutinize the actions of the Board to be sure that they comply with the statute and with reason.* (emphasis supplied)

Similarly, in *Roswell v. New Mexico Water Quality Commission* (1972), 84 N.M. 561, 505 P.2d 1237, (*cert. den.* 1973), 84 N.M. 560, 505 P.2d 1236, the New Mexico appellate court held certain regulations of the Water Quality Commission invalid with the following language:

This record reveals only the notice of the public hearing, the testimony of the various experts and others, some exhibits and the regulations. *We have no indication of what the Commission relied upon as a basis for adopting the regulations.* \* \* \* *These regulations are conclusions without reasons.*

\* \* \* In making regulations, § 75–39–4(D), supra, states the Water Quality Control Commission '. . . shall give weight it deems appropriate to all facts and circumstances . . .' including six categories stated in that statute. *We cannot effectively perform the review authorized by § 75–39–6, supra, unless the record indicates what facts and circumstances were considered and the weight given to those facts and circumstances.* We do not hold that formal findings are required. *We do hold the record must indicate the reasoning of the Commission and the basis on which it adopted the regulations.* The regulations were not adopted in accordance with law. Accordingly, the regulations are set aside. (Emphasis added.)

84 N.M. 565, 505 P.2d 1241.

There is another section of the Indiana environmental law which magnifies the need for providing supporting data in adopting regulations. Consistent with and supportive of the requirement of 2(b) that the listed factors be taken "into account" is *Ind. Code* 13–1–10–3, which reads in part:

The General Assembly authorizes and directs that, *to the fullest extent possible* :

. . .

(2) *all agencies* of the State shall: . .

(c) *include in every recommendation* or report on proposals *for* legislation and other *major state actions significantly affecting the quality* of the *human environment, a detailed statement* by the responsible official on—

(i) *the environmental impact* of the proposed action, . . .

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity;

\* \* \* \* \* \*

The environmental impact statement required by this statute encompasses some of the same factors listed for EMB and APC consideration in 2(b) and is persuasive of the importance of supporting data in recommendations for legislation *and* "other major state actions significantly affecting the quality of the environment.[7]

Lastly, we reject the Agencies' argument that no supporting data is necessary because the courts of this state have no authority to review quasi-legislative actions of administrative agencies in the enactment of regulations. The Indiana Supreme Court has engaged in such review historically, *Wallace v. Feehan* (1934), 206 Ind. 522, 190 N.E. 438; *Dept. of Insurance v. Motors Ins. Corp.* (1956), 236 Ind. 1, 138 N.E.2d 157, and such a position appears consistent with that taken in other states, e. g., in *Sabre v. Rutland R. Co.* (1913), 86 Vt. 347, 85 A. 693:

But where a board as the Board of Health, or the Board of Railroad Commissioners, has conferred upon it the power to make rules and regulations in furtherance of the police power, the statute is interpreted as though it conferred only the power to make reasonable regulations, and so the legislative act becomes complete, and the question of whether the rules and regulations presented are reasonable, or are unreasonable and arbitrary is a strictly judicial one, of which the courts must take cognizance whether the statute provides for proceedings in that respect or not.

85 A. at 701.

*See also In re Hypolite* (1973), 32 Cal. App.3d 979, 108 Cal.Rptr. 751; *Rosas v. Montgomery* (1970), 10 Cal.App.3d 77, 88

---

7. The question of whether environmental regulatory agencies must file environmental impact statements is a source of continued national debate. Compare *City of Roswell, supra,* and

*Buckeye Power et al. v. Environmental Protection Agency* (1973), 6 Cir., 481 F.2d 162 (which held no such requirement existed for the E.P. A.).

Cal.Rptr. 907, 43 A.L.R. 537; *Florida Citrus Commission v. Owens* (1969), Fla.App., 239 So.2d 840.

■ However, the failure to provide sufficient supporting data does not necessarily invalidate the Agencies' regulations per se. In *Yunker v. Porter County Sheriff's Merit Board, et al.* (1978), Ind.App., 382 N.E.2d 977, the failure to supply adequate data was held to be a technical defect which the Board should have the opportunity to correct.

Therefore, this cause is remanded to the trial court so that it may direct the Agencies to make a showing, if possible, that they took into account the factors required by the legislature before enacting APC–14 and APC–22, and for any other action as may be consistent herewith. If they can not make such a showing said regulations are hereby held invalid.

However, as the failure of the hearing officer to meet the statutory requirement under Ind.Code 13–7–7–1(c) regarding "New" APC–13, "Old" APC–13 and APC–19 has rendered those regulations invalid the judgment of the trial court nullifying those regulations is affirmed.

SHIELDS, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring:

Although I concur in the result obtained by the majority, I take issue with much of what is said and implied in the conclusionary portion of the decision relating to Issue Four.

My colleagues attempt, in large measure, to support their view in this respect by case law involving judicial review of quasi-judicial administrative decisions. It must be kept in mind that the administrative rule and regulation making authority is legislative in nature—not judicial. For this reason I disagree with the implication of those foreign decisions which imply otherwise or which sanction judicial oversight of the reasonableness of administrative legislation.[1]

*Wallace v. Feehan* (1934) 206 Ind. 522, 190 N.E. 438, cited by the majority, is truly a review of quasi-legislative action by an administrative agency. The Indiana Supreme Court, however, reviewed the "reasonableness" of the regulations there involved as a matter of law—not as a matter of fact. The Court stated:

> "In determining the question of fact as to the existence of pestilence or disease tending to destroy sources or supplies of food and the necessity for the adoption of reasonable and appropriate measures, the agency, board, or department thus created, though not judicial, is called upon to exercise judgment or discretion which, unless it appears to be purely arbitrary, is not the subject of judicial review." 206 Ind. at 533, 190 N.E. at 443.

*See also Department of Insurance v. Motors Insurance Corp.* (1956) 236 Ind. 1, 138 N.E.2d 157.

In sum, I disassociate myself from any implication that our decision today grants carte blanc authorization for judicial intrusion into the quasi-legislative function of the executive branch of government. In this respect I hasten to add that I do not retreat from the views and reservations I expressed in *City of Evansville v. Southern Indiana Gas & Electric Co.* (2d Dist. 1975) Ind.App., 339 N.E.2d 562 at 595–596.

1. Quite a different matter is presented by judicial review of "reasonableness" as that term is material to a determination whether the administrative rule or regulation is within the scope of authority lawfully delegated by the legislature, with sufficient standards and guide-lines. *See Indiana Alcoholic Beverage Commission v. McShane* (2d Dist. 1976) Ind.App., 354 N.E.2d 259.