Rebecca C. MEIER, As Chairperson and John C. Bailey, Michael L. Jordan, James R. Martin, Lt. Governor Frank O'Bannon, Patrick R. Ralston, Claude C. Reeck, Jr., Wayne T. Swallow and Roy J. Winkler, each as Members, of the Water Pollution Control Board of the State of Indiana, and Kathy L. Prosser, Commissioner of the Indiana Department of Environmental Management, Appellants–Defendants Below,

v.

AMERICAN MAIZE–PRODUCTS COMPANY, INC., Bethlehem Steel Corporation, Commonwealth–Edison Company of Indiana, Inc., Fibre Form Corporation, Indiana–Kentucky Electric Corporation, Indiana Michigan Power Company, Landis & Gyr Metering, Inc., LTV Steel Company, Inc., National Steel Corporation, Phelps Dodge Magnet Wire Company, Southern Indiana Gas & Electric Company, Appellees–Plaintiffs Below.

No. 49A02–9304–CV–185.

Court of Appeals of Indiana, Second District.

May 23, 1995.

Transfer Denied Oct. 10, 1995.

Ronald E. Elberger, Keith E. White, George T. Patton, Jr., Bose McKinney & Evans, Indianapolis, for appellants.

Bryan G. Tabler, Peter J. Rusthoven, Barnes & Thornburg, Indianapolis, for appellees.

## OPINION UPON REHEARING

SULLIVAN, Judge.

American Maize Products, *et al.* (collectively, AMP) has filed the present petition for rehearing based upon our opinion in *Meier v. American Maize–Products, Inc.* (1995) 2d Dist. Ind.App., 645 N.E.2d 662. We write in order to clarify our original decision.

In its petition for rehearing, AMP complains that this court's previous disposition was fundamentally flawed because we failed to take into account specific admissions made by the Water Pollution Control Board (Board) with regard to the fee scheme it established in the Final Rule. AMP argues that we overlooked the Board's admissions, contained in the Statement of Issues and Undisputed Material Facts, that there were no cost differentials in the Fee Statute's cost-related factors as between private and public dischargers, and that the Board's fee differentials, as adopted in the Final Rule, were not based upon any differences in surveillance, cost of issuance of permits, or costs of supervision and review of dischargers. AMP contends that, as a result of this conceded lack of cost differences, our determination, which allowed the Board to establish a fee scheme, was based upon non-existent cost differences.

AMP seems to base its petition upon one specific portion of our opinion:

"Whether or not the clearly appropriate ability of the Board to charge different permit fees for different dischargers carries with it the authority to totally exempt some sources, while charging some more and others less, presents a corollary question. Here, the Board altogether exempted certain publicly-owned facilities from paying fees for NPDES permits.

It is a longstanding principle of modern society that state-owned facilities differ from privately-owned facilities:

> 'The private corporation, whatever its public duties, is organized for private ends and may be presumed to intend to make whatever profit the business will allow. The municipal corporation is allowed to go into the business only on the theory that thereby the public welfare will be subserved. So far as gain is an object, it is a gain to a public body and must be used for public ends. Those who manage the work cannot lawfully make private profit their aim, as the plaintiff's directors not only may but must.' *Springfield Gas and Electric Co. v. Springfield* (1921) 257 U.S. 66, 70 [42 S.Ct. 24, 25, 66 L.Ed. 131] [Further citation omitted.].

In the context of water pollution control, it seems the public/private distinction is rational because of the relative ease with which public dischargers, and their records, may be accessed by a similar state agency; it seems a most basic concept that necessary surveillance of private dischargers requires additional resources. That the Board distinguished sources upon the bases of ownership, i.e., public or private, is a rational decision which was not unreasonable based upon the differing concerns associated with the different contaminant sources. Consequently, we find that the Board's authority to entirely exempt some dischargers is inherently encompassed within the confines of I.C. 13–7–7–2's authorization to establish a classification system." [1] 645 N.E.2d at 670.

However, as a whole, AMP misconstrues the decision. The quoted portion states that the Board possessed the authority to create an exemption between public and private dischargers based upon the inherent differences between, and the different concerns associated with, the classes of entities. While we did theorize that the possibility may exist that the surveillance costs may be different as between the two, that underlying rationale was not crucial to our conclusion that the exemption of public entities from paying a fee for discharge permits was a rational one. We did not base our conclusion that the Board was authorized to create a fee scheme upon overlooking the key undisputed material facts, as AMP argues, but upon the language of the authorizing statute itself, I.C. 13–7–7–2.

Although we may have misled AMP, we intended only that the exemption of municipal dischargers be based upon an examination of the differing concerns among the entities. Indeed, in that decision, we quite properly isolated the question of whether the Board *could* lawfully differentiate among classes of dischargers from the question as to the propriety of the actual amounts charged to those classes.

AMP's real challenge, however, seems to stem from the fact that we left open for the trial court's determination the propriety of the *amount* of NPDES permit fees the Board established based upon the cost factors:

> "We conclude that, though the Board was authorized to establish a differentiated fee scheme, summary judgment in favor of the Board would have been inappropriately rendered. The Fee Statute allows the Board only to recoup its costs; thus, the question remains as to whether the monetary amounts the Board set in its existing fee scheme are, in fact, logically tied to the recoupment of its costs. This must be a question of fact for the trial court's determination." 645 N.E.2d at 674.

AMP seems to argue that, because the Board admitted that the cost factors were not dif-

---

1. The concomitant footnote reads:
 "In so holding, we emphasize that any such exemption must be granted by resort to reason-

able and rational analysis of the circumstances. They may not be arbitrarily granted or withheld." 645 N.E.2d at 670.

ferent, the amounts set could not have been logically tied to cost-recoupment. We recognize that, in our initial decision upon this matter, and as AMP has brought to our attention, we could have gone further; we could have recognized AMP's necessarily implicit argument—that the amounts the Board set in its Final Rule were arbitrary and capricious because the Board itself admitted that there was no difference in the Fee Statute's cost-related factors as between the two classes of dischargers. Further, upon review, we recognize that the most prudent course of action may be to proceed as AMP requests.

However, we make very clear that AMP's initial argument did not assert that the Board's determination of permit fee amounts was necessarily arbitrary and capricious because it lacked any factual evidentiary basis. Rather, it argued that the Board did not have statutory authorization to set such a permit fee scheme. That the lack of differences in the statutory cost factors, when determined to have no factual predicate, might support a grant of summary judgment in favor of AMP is an issue separate and apart from the question of law. *See Ray v. State Election Board* (1981) 4th Dist. Ind. App., 425 N.E.2d 240, 242; *see also Indiana Environmental Management Board v. Indiana–Kentucky Electric Corp.* (1979) 181 Ind.App. 570, 393 N.E.2d 213, 222 n. 1 (Sullivan, J., dissenting). Thus, in extending this analysis, we are doing something that is very different than determining the limits to which the Board's statutory authority to create a fee scheme extended, and upon which AMP focused.

▇▇▇ Therefore, we reiterate our decision upon the applicable law—that the Board did possess the statutory authority, per I.C. 13–7–7–2, to differentiate between private and public dischargers. However, as the reviewing court, we are not empowered to reweigh the Board's decisions; we may only determine whether the Board's actions, in setting the specific amounts here at issue, were arbitrary and capricious, were unsupported by substantial evidence, or were in violation of the relevant rules of law or proce-

dure. *See Metropolitan School District of Martinsville v. Mason* (1983) 1st Dist. Ind. App., 451 N.E.2d 349, 353; *see also Riggin v. Board of Trustees of Ball State Univ.* (1986) 489 N.E.2d 616, 625, *trans. denied* (court cannot interfere with acts of an agency which are within the allowable scope of discretion unless that act is arbitrary, capricious, an abuse of discretion or unsupported by substantial evidence).

▇▇▇ That the Board is empowered to differentiate among classes of dischargers based upon their ownership, however, will not condone action of an arbitrary and capricious nature, justified by no empirical or factual basis upon which to premise those differentiated amounts charged. Where, as here, the agency's action is quasi-legislative in nature, we must remain cognizant that our review is limited to an examination of the "reasonableness" of the "administrative legislation." *Indiana–Kentucky Electric Corp., supra,* 393 N.E.2d at 222. In that instance, unless the agency's quasi-legislative action "'appears to be purely arbitrary, [it] is not the subject of judicial review.'" *Id.* (quoting *Wallace v. Feehan* (1934) 206 Ind. 522, 533, 190 N.E. 438, 443).

▇▇▇ Here, a unique factual situation exists. We have no basis upon which to determine that the Board has properly complied with the Fee Statute's cost factors while at the same time restricting itself to cost-recoupment. Furthermore, as the Board has admitted, once the Fee Statute's cost factors are taken into account, there is no evidence that differences exist to justify the higher amounts charged to private dischargers. The Board, has then, in essence, admitted that it has neither properly taken the Fee Statute's cost factors into account, nor restricted itself to cost-recoupment, as it is bound to do.

Though normally the burden to prove that the Board's actions were arbitrary falls upon the party challenging the action,[2] in light of the Board's admissions, we may conclude that the Board disregarded the applicable substantive law. Because it disregarded the

2. *Riggin, supra,* 489 N.E.2d at 625.

facts and circumstances, the Board's action was inappropriate. *See Ray, supra,* 425 N.E.2d at 242. Further, were we to remand to the trial court in order to determine whether the amounts set by the Board were arbitrary and capricious, the court could reach no other decision than that the agency did not properly apply the Fee Statute's cost factors.

The question remains as to the proper course of conduct for this court to take under the present circumstances. We must determine whether the Board may essentially retroactively justify the amounts (but not the differentiation based upon status) it established in the Fee Statute by considering further supporting facts in additional proceedings before it.[3]

 The sole remedy the trial court or the Court of Appeals may afford when an administrative decision is found unlawful is to vacate that decision and remand to the Board for further proceedings. *Mason, supra,* 451 N.E.2d at 353. By definition, our authority extends only to reversing the agency's actions. Therefore, as the reviewing court, our sole recourse is to vacate the fee scheme's factually unsupported amounts. We would step beyond our bounds, as well as our expertise, were we to move past a simple reversal of the agency's actions to actually set the proper permit fee amounts. *See Ray, supra,* 425 N.E.2d at 242.

 Were we to remand to the Board to reconsider the amounts charged, the Board could not supplement its original findings, because those amounts it set were admittedly not tied to the Fee Statute's cost factors. The Board would, however, be bound to establish any new amounts for NPDES discharge permit fees in accordance with the law it is bound to follow. And, as the Board is empowered to set the fee scheme, we do not require the Board to re-evaluate those classifications; we only require that any actual dollar amounts the Board wishes to collect be logically tied to the Fee Statute's cost factors with some factual basis. That the Board may be forced to re-evaluate its classi-

fication scheme in the process is not our concern.

We therefore determine that, although the trial court's decision that the Board had no statutory authorization to differentiate among classes of dischargers was erroneous, the Board could not have enforced those permit fees because those fees lacked a rational evidentiary basis. To that extent, the Petition for Rehearing is granted, and the Board is enjoined from collecting those fees it established pursuant to the Final Rule.

SHARPNACK, C.J., and KIRSCH, J., concur.

---

**3.** We note here that, in the future, the issue as to the proper amount of fees for NPDES discharge

permits has been foreclosed by the General Assembly.